IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| LEWIE CARL ANDERTON | § | |
| _____ | § | |
| | § | |
| | § | |
| | § | Case No. 6:12-cv-548 |
| BOT REAL ESTATE LLC | § | |
| | § | |
| v. | § | |
| | § | |
| LEWIE CARL ANDERTON, et al., | § | |
| *Appellees* | § | |

# MEMORANDUM OPINION AND ORDER AFFIRMING DISMISSAL OF BANKRUPTCY PROCEEDINGS

The debtor in this case, Lewie Carl Anderton, filed for bankruptcy protection after a state court entered judgment against him for more than $8 million. When ordered to post a supersedeas bond equal to half his net worth, Anderton instead filed for bankruptcy protection under chapter 11 of the U.S. Bankruptcy Code. The debtor failed to propose a plan of reorganization, so the trustee and BOT Real Estate, LLC, the creditor with the greatest interest in the bankruptcy estate, jointly proposed a plan. Anderton objected. The bankruptcy court denied confirmation of the plan and ultimately dismissed the case.

BOT challenges both the bankruptcy court's rejection of the plan and the dismissal.[1] Having carefully considered the parties' briefing, the record, and the applicable law, the Court

---

[1] BOT filed two separate appeals. The first appeal challenges the bankruptcy court's rejection of the proposed plan of reorganization. *See BOT Real Estate LLC v. Anderton*, No. 6:12-cv-332. The second appeal challenges the bankruptcy court's dismissal order. *See BOT Real Estate LLC v. Anderton*, No. 6:12-cv-548. The Court granted BOT's unopposed motion to consolidate the appeals and designated the above styled action as the lead case.

AFFIRMS the decision of the bankruptcy court. Accordingly, the remaining issues are moot and thus are not addressed in this opinion.

I.     **BACKGROUND**

In 2002, William Cawley and Debtor Lewie Carl Anderton formed two partnerships—Cascades Properties, Ltd. (Cascades) and Bellwood Lake Partnership, Ltd. (Bellwood) to develop a residential community and golf course called The Cascades in Tyler, Texas (the Cascades Development). Over the next several years, the partnerships borrowed millions of dollars from Park Cities Bank (the Bank), where Cawley was a 10% shareholder, director, and member of the loan committee.

In January 2008, Anderton executed a $25 million note on behalf of Cascades in favor of Cawley-PB Funding, LP, an entity affiliated with Cawley. The note was secured by a deed of trust on Cascades' real and personal property. In late 2008, Cawley-PB Funding acquired Cascades' debt. Just two months later, Cawley-PB Funding sent Cascades a notice of default and acceleration of the debt. Anderton claims that Cawley caused the Cascades' default when he allegedly misapplied funds. At the foreclosure sale, Cawley-PB Funding purchased the Cascades' property for the amount of the outstanding debt.

Cawley also established BOT Real Estate, LLC, which ultimately purchased the debt owed by Bellwood to the Bank. Just one day after paying Bellwood's 2008 property taxes, the Bank demanded reimbursement for the tax payment and gave notice of its intent to accelerate the debt. Less than two weeks later, the Bank assigned the Bellwood debt to BOT. At the foreclosure sale, BOT purchased the Bellwood property for less than the amount owed, leaving a deficiency of nearly $8.4 million, personally guaranteed by Anderton.

In the midst of these transactions, Anderton formed three trusts and also established Anderton Development Partnership, LP (ADP). Anderton then transferred assets to the trusts, to ADP, and to his counsel.

In May 2008, Anderton and ADP sued Cawley, BOT, and others in state court, accusing the defendants of breach of fiduciary duty and civil conspiracy related to the handling of the Cascades and Bellwood debt and foreclosure sales. BOT and other co-defendants counterclaimed, seeking to remove Anderton from control of the Cascades and also to recover the Bellwood deficiency. In April 2010, the state court granted summary judgment in favor of defendants, dismissing Anderton's claims and awarding affirmative relief on BOT's counterclaim, resulting in an $8.617 million judgment against Anderton.

Anderton and ADP appealed the state court judgment, and the state court ordered Anderton to post a supersedeas bond equal to half his net worth, rejecting Anderton's claim that he had a negative net worth. Anderton did not post the supersedeas bond.

On June 8, 2011, Anderton filed for bankruptcy protection under chapter 11, title 11 of the U.S. Bankruptcy Code. In mid-September 2011, the bankruptcy court granted BOT's unopposed motion to appoint a chapter 11 trustee of Anderton's bankruptcy estate. When Anderton did not propose a plan of reorganization, BOT and the trustee jointly proposed a plan (the BOT Plan). Anderton opposed the BOT Plan.

On February 6, 2012, the bankruptcy court held a hearing to consider confirmation of the BOT Plan. The matter was not fully heard because Anderton was admitted to the hospital the night before the hearing. The hearing was continued until March 22, 2012.

In the interim, the trustee filed an adversary proceeding against ADP, Anderton, and his wife, Louise Anderton, related to the formation of ADT and other entities and the subsequent

transfer of assets to those entities in late 2008. Attorneys from Andrews & Barth, PC—a creditor as well as the then-counsel of record for ADP—filed a motion to abate consideration of the BOT Plan pending resolution of the adversary proceeding and the state appellate court's consideration of the state case involving the Cascades Development.

At the March 22, 2012 hearing (the March Hearing), the bankruptcy court heard oral argument and ordered the following: (1) confirmation of the BOT Plan was denied, (2) the bankruptcy case was abated pending determination of whether the case should be dismissed with prejudice, and (3) the parties were ordered to show cause why the case should not be dismissed with prejudice. While, Anderton, BOT, and the trustee each filed written responses, none of the other creditors responded to the Court's order. BOT opposed the dismissal. BOT and the trustee requested that the proceedings be converted to a chapter 7 case. Anderton supported the dismissal. Before the court issued its order, the state appellate court reversed the summary judgments in favor of BOT and remanded to the trial court. On June 21, 2012, the bankruptcy court dismissed the bankruptcy proceedings with prejudice to Anderton's right to refile for 24 months.

## II. JURSDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a)(1).

## III. LEGAL STANDARD

A court may dismiss or convert to chapter 7 a bankruptcy proceeding under chapter 11 when the court finds "cause." 11 U.S.C. § 1112(b)(1). The statute provides a list of non-exhaustive circumstances which would amount to "cause." 11 U.S.C. § 1112(b)(4). The bankruptcy court assesses whether cause exists to dismiss a chapter 11 case based on the totality of the circumstances. *In re Starmark Clinics, LP*, 388 B.R. 729, 736 (S.D. Tex. 2008). If the

court finds cause, then it must determine whether dismissal or conversion to chapter 7 is in the best interest of the creditors and the estate. 11 U.S.C. § 1112(b)(1).

The district court reviews the decision to dismiss a chapter 11 case under an abuse of discretion standard. *In re Humble Place Joint Venture*, 936 F.2d 814, 816 (5th Cir. 1991).

## IV. ANALYSIS

The bankruptcy court did not explicitly state its statutory basis for dismissal. But the court made a number of findings in its order and also incorporated the findings made on record during the March Hearing. These findings support the Court's dismissal.

First, the bankruptcy court concluded that the debtor filed the bankruptcy proceeding for the improper purpose of seeking protection pursuant to the automatic stay rather than procuring the supersedeas bond as ordered by the state court. Second, the bankruptcy court found that the proceedings presented "a continuation of a two-party dispute that has consumed these parties" rather than a true bankruptcy proceeding designed to protect creditors. The bankruptcy court concluded that "[t]he circumstances have now fully revealed that this case was, and still is, driven by this dispute between the Anderton entities and the Cawley entities — it is not about the general adjustment of debtor-creditor relationships."

BOT argues that the bankruptcy court abused its discretion in dismissing the bankruptcy proceeding for the following reasons: (1) the bankruptcy court erred in finding cause to dismiss the matter, and (2) the bankruptcy court did not consider the best interests of the creditors.

Anderton responds that the dismissal is supported by the record and the applicable law. The Court agrees.

### A. Cause

The bankruptcy court's dismissal rests largely on its finding that Anderton filed the proceedings for an improper purpose: to stay the execution of the state court judgment without having to procure a supersedeas bond. The bankruptcy court further noted at the March Hearing that "Anderton has failed miserably" to make a genuine effort toward reorganization. The parties do dispute that an improper purpose could constitute cause. *See, e.g.*, *In re Starmark Clinics, LP*, 388 B.R. at 736 ("A debtor's attempt to use the provisions of the Bankruptcy Code to gain an unfair advantage in a two party dispute strongly supports a finding of cause for dismissal.").

But BOT argues that the bankruptcy court abused its discretion in so finding because the court did not hold an evidentiary hearing on the issue. According to BOT, the bankruptcy court's conclusion is unsupported by evidence. Also, BOT claims it was prevented from presenting evidence to show that Anderton was genuinely seeking reorganization.

The Court finds BOT's argument egregiously inconsistent with its own position. BOT insists that Anderton filed his bankruptcy petition "in lieu of posting the supersedeas bond." Furthermore, at the March Hearing, BOT's attorney made the following statement: "[W]hat we've seen out of this debtor in this case is nothing but delay. He had four months to file a plan. He didn't file a plan. He didn't file this case in order to reorganize his affairs. If he had, he would have filed a plan in this case." Later in the hearing, BOT's attorney claimed, "They don't want this case to come to fruition. They don't want to reorganize. They only want to buy time until they can get a ruling out of the appellate court in the state case that they think will be in their favor, but actually will not resolve anything." BOT made similar statements in its response to the court's show cause order regarding Anderton's "bad faith" in filing the bankruptcy petition.

Thus, the very facts relied on by BOT's attorney to conclude that Anderton's purpose was improper were a part of the record and properly before the Court. Anderton's failure to file a plan was a matter of record. His opposition to the BOT Plan was also a matter of record. Finally, Anderton's support of the proposed abatement was a matter of record. Thus, BOT's position—in direct conflict with its earlier statements—is without merit.

Additionally, BOT suggests in its brief that an evidentiary hearing "*might* have shed light on the matter" (Doc. No. 8 at 14 (emphasis added)). BOT further complains that it was precluded from presenting evidence to counter the Court's conclusion. But the bankruptcy court provided notice of its intent to dismiss and invited briefing. BOT never clarified to the bankruptcy court—or as a part of this appeal—what evidence it would proffer to counter the bankruptcy court's conclusion. (Conversely, and as discussed above, BOT has consistently argued that Anderton filed the bankruptcy proceedings for an improper purpose.) *See In re Wren Alexander Investments, L.L.C.*, slip op., 2013 WL 2421945, at *3 (5th Cir. June 4, 2013) (per curiam) (noting that a party complaining that the bankruptcy court did not allow it to present evidence, the party must preserve any error by making an offer of proof).

The bankruptcy court ultimately determined that neither Anderton nor BOT sought to invoke the bankruptcy court's authority for a legitimate bankruptcy purpose. As the bankruptcy court assessed, this case boils down to a dispute between former business partners and their attempts to recover for alleged financial transgressions. The dispute has spanned multiple forums including two state trial courts,[2] a state appellate court, and the bankruptcy court, both in the form of a chapter 11 proceeding and an adversary proceeding. But at its heart, it is a dispute

---

[2] While the bankruptcy case was pending, Anderton filed a second state court case related to the Cascades Development, this time naming the Bank as a Defendant.

between BOT and Anderton related to the Cascades development and the alleged misconduct by both sides—a matter that is squarely before the state court.

Based on the evidence before it—including the timing of the bankruptcy filing and the lack of evidence showing Anderton made any effort to genuinely pursue a plan of reorganization, the bankruptcy court did not abuse it discretion in determining that Anderton did not initiate the bankruptcy proceedings for a legitimate purpose. Accordingly, the bankruptcy court did not abuse its discretion in finding cause to dismiss the proceedings.

### B. The Interests of the Estate and Creditors

BOT also argues that the bankruptcy court failed to consider the interests of the creditors. Despite BOT's position, the bankruptcy court clearly considered and admittedly struggled with the question of the creditors' best interests. In the court's comments at the March Hearing (incorporated by reference into the order of dismissal), the bankruptcy court weighed the interests of the creditors in moving ahead with the bankruptcy proceedings versus not proceeding: "[I]s it in the best interest of creditors and the estate . . . to accept the money that's proposed in the [BOT Plan] . . . ? Or is it in the best interest of creditors and/or the estate to allow the state process to continue in hope that the summary judgment gets reversed and Anderton's affirmative claims prevail?" Given the status of the various related proceedings, the bankruptcy court concluded that it could not determine which would be in the best interest of the creditors. As did the bankruptcy court, this Court also finds significant that other than BOT, none of the creditors filed briefs opposing the dismissal, despite the bankruptcy court's invitation to do so in its show cause order.[3]

---

[3] The Court notes that these "Unaffiliated Creditors," as referred to by BOT, are not participating in this appeal, either, with the exception of Andrews & Barth, P.C. Andrews & Barth agree with the dismissal.

As suggested in the Court's comments at the March Hearing, the interests of the non-BOT creditors would improve if Anderton prevailed in the state court matter against BOT. The bankruptcy court also noted during the hearing that BOT's support for the BOT Plan would essentially prevent review of the state court's summary judgment ruling, thus allowing BOT to "[walk] away with the fruits of a trial court victory that it might not [have] deserved" and as previously noted, a victory that would not be in the best interest of the estate or the remaining creditors. After the March Hearing but before the court issued its order of dismissal, the state appellate court reversed the state court summary judgment, undermining BOT's position as a creditor.

In view of all these circumstances, it is clear that the bankruptcy court carefully considered the interests of creditors and did not otherwise abuse its discretion in dismissing the bankruptcy proceedings.

## V. CONCLUSION

For the reasons discussed above, the bankruptcy court's order dismissing the chapter 11 proceedings is AFFIRMED. Because the dismissal was proper, the Court does not reach the remaining issues as those matters are moot.

**It is SO ORDERED.**

**SIGNED this 23rd day of September, 2013.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE